Case number 23-5236, Human Rights Defense Center appellant v. United States Park Police. Mr. Davey for the appellant, Mr. Boldy for the appellee. Morning, Mr. Davey. You may proceed when you're ready. Thank you, Your Honor. Your Honors, may it please the Court. The District Court made two independent errors here. First, it erred by not ordering the Park Police to disclose the names of officers whose misconduct gave rise to settled federal tort claims because the government never connected specific or any harms to potential release. Second, it erred by imposing a permanent prior restraint, clawback of information the government inadvertently disclosed, relying on only the inherent powers of the Court. This Court should reverse both errors. You referred to settled federal court claims. Were these claims filed in federal court? Sorry, settled federal tort claims. Oh, I misheard. Yeah, that's my fault. Sorry. Federal tort claims, I believe that one of them, and you can kind of tell this around JA-58, one of them, I think, was settled only at the claim stage where they'd filed the SF-95 form, and I think one of them had a docket number. But yes. But anyway, I'm happy to address these points. These are distinct issues, so I'm happy to address them in either order at the Court's preference. Why don't you go ahead and whatever. Certainly. I'll start then with the officials' names. I think the District Court erred there primarily because the government failed at the first step. They have not shown that disclosure would compromise a significant privacy interest on the part of these officers. As they've conceded, the Park Police never asserted any potential harm that would come to the officers by virtue of disclosure, speculative or otherwise. Why do you say they concede that? In their brief around page 16, it sort of says that, oh, if the court thinks that we didn't, they acknowledge that the District Court sort of supplied the potential harm, and they say, oh, they asked for a remand. They say, oh, we should, if this court doesn't think that we did I have reasons why the court shouldn't do that. I know that that's something that this court occasionally does. Obviously, my colleague will have his opinion about that, but I don't think that if you look at the declarations that they put in the record, they don't assert a harm that would come to the officers of the release of these names, and they don't connect that harm to disclosure, which I think it's two independent problems there. So you're referring to page 15, where the government says, although the index and the government's declarations did not specifically analyze the nature of the privacy interest at issue. That's right. The District Court correctly recognizes the names of the officers. That's right, Your Honor. Public to infer that they engage in wrongdoing. That's right. And the District Court, it's in the District Court opinion that JA-70 is where the District Court is sua sponte, just supplying its own sort of view of what the privacy interests are. So the agency cites a case called Niskanen, which sort of seems to do what you're saying is improper in terms of the court supplying its own rationale, arguably in a case where it was just self-evident what the harm was. And I'm curious how you would distinguish that case. I think there's a few distinctions here. One of them, I think one of the key distinctions, which we talked a lot about in the brief, is that this really is only about names. And I think Niskanen, and I think a couple of the other cases that my colleague has relied on, involve names plus other information that would make the harm more foreseeable, including home addresses or things like that. I guess the problem is that if it's ever okay for the court to come up with its own reasons, then that's the principle that's a problem. I can't speak to the particular briefing that went into that case, but I think the weight of authority in this court is that district courts should not be sui sponte, supplying their own privacy justifications. It's incumbent upon the government to assert that. And I think that's true whether you look at the Reporters Committee case in 2021 that specifically talks about the effect of the 2016 FOIA amendments. The 2016 FOIA amendments make very clear in statute that the government has to do that, not only has to do it, but has to do it with reasonable specificity. You mentioned you had reasons the government shouldn't get another chance on remand. Could you explain what those reasons are? Yeah, I can give you five different reasons for that, Your Honor. One of them is that even now they don't offer anything in the briefing. I think the August case or the Leopold case or whichever case it was, the government, at least in their appellate brief, said, here's what we would put into the record on remand. And here the government says, the direct quote at page 16 of their brief is, no more explanation is required. And so I think you should take them at their word that no more explanation is required in their view. What else would they put in the record in the district court? That's the first reason. The second reason is that it does not serve judicial economy to just send these back up and down repeatedly and do rounds and rounds of briefing on things that frankly should be briefed in the first instance. The third is that the specificity of harm has, they've always needed to offer some harm. They point to, you know, they point to the idea that this Reporters Committee case, they couldn't possibly have known that they needed to do this based on the plain text of the 2016 FOIA amendments. And I think that if you look at both the, I mean, the plain text of the amendments themselves, but also if you look at all of these, even predating the amendments, all of the cases that say, look, you need to show some harm, you need to offer some harm into the record. They haven't even done that here. It's not even really about specificity, which is what the Reporters Committee case is about. They've offered no harms. They just relied on the district court to do that. The next reason is, you know, the Reporters Committee case, again, I think they offer that as they call it intervening authority, right? Which is one of the things that might justify a remand instead of an outright reversal. And, you know, in addition to the Reporters Committee case, that itself relies on a case from 2020 called Machado. There are all of these District of Columbia decisions that predate this case involving the government defending FOIA requests. And all of those are just sitting there. And Reporters Committee itself, the quote is apparent from the statutory text alone. And the statutory text is from 2016. Yeah. And then the last reason is that I think that this general practice that sometimes happens of remanding instead of reversing to give the government a second bite at the apple undermines the purpose of the FOIA. The FOIA is meant to facilitate disclosure. And the idea, and, you know, a lot of this, you know, I represent journalists. There's a lot of media organizations that put an amicus brief in here describing the effect of, you know, repeated delays of giving the government second bites at the apple. I just don't think it's, I just don't think it's justified here for all of those reasons. My only question in this is, you mentioned the August case and the big difference there is that the government wanted to invoke a new exemption on remand. Do you have any case where the government was saying, we just want, or the remand would be to offer more explanation for the same exemption and we didn't allow the government? No, your honor. And I think that the, I think that one of the, again, I think that what that highlights, I acknowledge that this is a common practice here, right. But again, where I think, I haven't read all the briefs and all of those other cases, right. But where again, here the government says, they explicitly say to this court, no more explanation is required. Why isn't it just self-evident that tort claims that have not been established, that disclosing that officers were accused and that money was paid out would effectively disparage these officers. I mean, why isn't that just obvious? I think that, I mean, for one thing, I think that if you look at some of the other in this court's history, they talk about fully unsubstantiated. They talk about, you know, complaints that are made that the government never does anything about, right. And here, I think there's two differences, right. One of them, I think is that settling these federal tort claims for more than nuisance value, I think speaks to it being- Is it more than nuisance value? I think so. As someone who has spent a long time doing plaintiff side civil rights claims and has been offered substantially less than that by the government in a lot of cases. And so I think, I think yes. And then I think the other point that I would, you know, at least one of these officers, and this is in the record too, had a substantiated internal affairs investigation. And so I think even if you're, I mean, that's a separate problem. And we wrote about this in the brief too, that the district court treating them as a monolith, even though they're different, differently situated in slightly different ways, I think is a separate problem. But again, I think, I think that the, there's a difference between like in Stern, for example, and Stern even was under Exemption 7C instead of Exemption 6, still called it a close case. But in Stern, they specifically talk about non-intentional conduct on the part of the officers. And in the tort cases, in any case where there's a tort claim made, or not any case, but in a lot of them, all the ones here, you're talking about intentional conduct on the part of the officer, which I think is another difference. I do want to make sure, however, to get to the clawback issue prior to, you know, having to sit down. And so I want to talk about that because I think the district court erred by ordering permanent prior restraint in the form of clawback, because it does not qualify under the precedence of this court or the Supreme Court limiting the broad application of the court's inherent powers. And the biggest reason for that is that it's inconsistent with the First Amendment. The court, the Supreme Court and this court have long, long strings of authority that permanently enjoining, especially journalists, from using information that they have lawfully obtained. And the order here is very broad, right? It says they're not allowed to publish, they're not allowed to disseminate or even make use of, which would seem to even enjoin them from, you know, doing any sort of like internal investigation or anything with that. I'm following. And under federal of civil procedure, I know your argument is that they don't apply and they may not apply. That's right. But should we conceptualize obligations to destroy or return mistakenly disclosed information under Federal Rule 26B-5-B or Federal Rule of Evidence 502-B as prior restraints? I've never- No, and I think- As a prior restraint situation. I agree with you, Your Honor. And I think there are two key differences here. One is that this is FOIA disclosure. This is not civil discovery. And there are so many differences between those things, right? And in civil discovery, you have to show a need and the FOIA provides a background entitlement. In civil discovery, there's different standards around privacy. In civil discovery, they consider availability from other sources differently than the FOIA does. But isn't structurally assume that there is an applicable, I mean, just to make it harder, an applicable privilege under FOIA, deliberate process or- As in Exemption 4 or Exemption 5 or, yeah. And so it's quite parallel in terms of the interest underlying and something has been, you know, mistakenly turned over. Why does it become a First Amendment prior restraint in the FOIA context and not in the federal rule litigation context? Yeah, I think one of- It seems like maybe there would be a difference in terms of how you'd analyze the judicial power, but I don't really follow why it changes the First Amendment. I think that the key difference is litigation versus non-judicial sources, right? And this sort of gets to the difference between Florida Star and Seattle Times, right? I think the key issue is whether you're thinking of disclosure under the FOIA as, you know, coextensive with civil discovery or not. And I think if you- Maybe the easiest way to think about this is to think about this in practice, how these FOIA cases happen, right? Which is there are a number of failures that have to happen along the way. Like a requester makes a request. Normally, the government is just supposed to produce those records, right? That's what they're supposed to do. Here, they didn't reply at all, which is why it ended up being filed. I think one of the things that Your Honor's question gets at is it would be very strange to say that if the government inadvertently discloses a document prior to the party having to file a complaint in federal court, they couldn't do anything about it. But if they're doing it after they themselves have dragged their feet and then have forced the requester to file a complaint, even though the district court is not managing FOIA disclosure in the same way that they're managing civil discovery, it's odd to then say that the government gets more protection after having been recalcitrant, even though the process is exactly the same, just to say the government just disclosing records. But that seems to me to go to the question of the court's inherent authority or not, as opposed to the First Amendment question. Again, the first- This seems to be a bootstrapping to say that something that the recipient is not entitled to by hypothesis under FOIA, the fact that it's turned over erroneously raises a prior restraint. I think that the vast majority of the Supreme Court's prior restraint cases involve information that the individual was not entitled to, whether you're talking about Florida Star itself, which is information that even under Florida state law was not even allowed to be disseminated. If you're thinking about the Pentagon Papers, if you're thinking about NEAR, if you're thinking about all of these cases, there's not actually the question of whether a party is entitled to them in the first instance is not really relevant. So your position is that it was the SDNY case, the ACLU case was wrongly decided. I think so. Classified information was erroneously released. The fact that that information has a classification is not a way to distinguish it from- I think if you look at NEAR, the Supreme Court case, they contemplate- It's not that it could never happen in any circumstances, but it's a prior restraint analysis. If you look at NEAR, they contemplate troop movements. There's a certain very high burden that the government has to meet to show that they've- And it's possible that the ACLU case, I don't know certainly know it was a complicated and I think sealed record. I don't know everything that was in it, but it's possible they could have attempted to meet it there. I think if you look at this case, there's no possible argument. There's anything here that falls within any of that. I see that- On the flip side, yeah. Well, that's an argument that the First Amendment analysis would be different if there were sensitive national security materials. But your position is that there's no inherent clawback authority in the first place. I'm not sure how that analysis would differ based on the nature of the document. It's not that there's no inherent clawback authority in the first place. It's that it would need to be at least consistent. Any exercise of inherent authority by a court has to at least be consistent with federal statute and the constitution. If they're exercising inherent powers, it cannot transgress the bounds of the First Amendment. Again, I think it's possible that there's some case, again, maybe it's troop movements as near hypothesized, maybe it's something else that's that level of whatever. The government has a very high burden that they have to meet to justify a prior restraint in general. I think there's no reason to distinguish the clawback context from the burden that they have to meet when they're asking for a prior restraint in general. Would we need to reach the First Amendment issue if we thought, unlike in the ACLU case where the court had ordered disclosures under FOIA? Here, the court has not ordered any disclosures. The court has just said, get together, do what you should have done before lawsuit was filed, and only come to me when you've done what you can do voluntarily under the law. So there really isn't the notion that, I mean, I don't think anybody's arguing that there's a historical basis for this clawback and other basis that it's in protection of the court's authority. It's a little bit hard to see in this fact pattern, or if we were to conclude that on this fact pattern, the court's authority is not threatened by the mistake in disclosure, and therefore the clawback doesn't arise or isn't justified on that basis. Then do we need to reach any First Amendment issue at all? I think, I mean, obviously it's at your discretion to how you want to resolve this case. I think if you wanted to resolve it in that way, you don't need to write this broad opinion that gives me absolutely everything that I asked for as much as I would want that. But on the facts of this case, I think Your Honor is right. And this is sort of what I was alluding to before, right? Which is that the way that my colleague has sort of characterized it is like, by calling it like a meet and confer, they're trying to make it sound like it's normal civil discovery, and it just isn't. The district court, you file the complaint, and then you just file repeated status reports while the production is happening. The exact same production that should have been happening prior to filing a complaint at all, and it does not require a court intervention in any way. And so you absolutely could resolve it on that basis. I think that's right, Your Honor. But again, I think that the First Amendment question, I think it's important, but I think you could resolve it that way. Yes, Your Honor. Good. The problem is that there's no authority. How could we possibly go beyond that to a constitution? Well, the question is why there's no authority, I think, right? And if there's not under the criteria in Cobell, which are not constitutional criteria. That's true. That's true, Your Honor. Yeah. If you agree with that argument, I think that's right. We agree with what? The argument that there's no authority to order clawback. Yeah. Yeah. End of story. Yeah. I'm happy to talk more about either clawback or I'm happy to see you on the panel. All right. Thank you. Good morning, Mr. Baldi. Good morning. May it please the court. I'd like to begin where we left off with the clawback issue. Last year, federal agencies processed more than 1.1 million requests. 1.1 million, Your Honor. And at that volume, unfortunately, but inevitably, some mistakes are going to happen. And given the type of information the government holds, the consequences of those mistakes can be quite catastrophic. It could be that the inadvertent disclosure of classified information, title to the national security. It could be information that's not about the government, but about a third party whose information the government holds. So whether that's the company's trade secrets, the disclosure of which could destroy a business, or information about an individual that's incredibly sensitive, whether that's who's taken leave from a federal job to cross state lines to get an abortion, to immigration status, to records of medical treatment and psychiatric care in a government facility. There's a lot of information that if disclosed could be quite devastating. And in this case, we have information where the plaintiff came into court, invoked the authority of the court, and said, we want you to resolve the question of whether we're entitled to information about these claims, including the claimant's names. And the district court said, no, you're not entitled to it. But because there was an inadvertent disclosure, a failure to redact the names in a few instances in these documents, they say that they're entitled to keep it anyhow and to publicize it and to make use of it. And I don't think that's right. I think that- Is there any reason that someone who files a tort claim against the Park Police would have an expectation that their name would be kept confidential? So for the tort claim, Your Honor, and there's two claims here with inadvertent disclosure. One is an EEO claim and one's a tort claim, and I'd like to address that question for both of them. For the tort claim, I don't know other than the idea that this might be subject to Exemption 6, that there would be a strong expectation of privacy. But I do think there's a difference between filing an administrative claim and then taking the further step of going into district court, where you have to put everything about yourself into the public record and on a public docket. And for the EEO claim, the claimant in this case, I think, does have an expectation of privacy. EEO processes are confidential until a lawsuit is filed in court. And the claimant here alleges sexual harassment and discrimination. The party has an expectation of privacy as against the government. I'm sorry, Your Honor. The expectation of privacy is an expectation against the government, that the government will not be invading citizens' privacy. Well, Your Honor, I think, for example, if a federal employee files a Title VII charge against the government and it goes through an EEO investigation, there's both statutory and regulatory protections that say that that information can't be disclosed unless litigation filed in district court. So that's protection against the prying eyes of anyone who might be curious what's going on there, but isn't the government. I think that's a protection to the public at large. As for the tort claim, I think the expectation of privacy might be somewhat diminished. But again, here, I don't think we have to resolve that because the district court held that the information that the claimants have substantial interest in privacy, that it's not overcome by public interest in disclosure, and that's not contested in this court. That's sort of an established baseline, that there's just no right to breach those privacy protections and obtain the information. If I could talk about sort of the... One question about the practical consequences. You mentioned, for example, certainly it is a helpful hypo for you if these were national security-related or classified documents. And I am curious if you know whether, outside of the FOIA context, if a non-governmental employee comes into possession of classified materials, does the government have authority to seek an order prohibiting them from disseminating materials, just sort of like criminal prosecutions under the espionage act? So, Your Honor, I don't think that's... That's not an issue here, but the government has taken the position that it does have that ability in certain cases. I think the standards are different. The sources of authority are different. And frankly, the constitutional dimensions are different. I am sympathetic to those arguments, which would mean that in that kind of a case, the government can make a different kind of argument about clawing back those types of documents, doesn't it? In the classified information context, certainly, in some of these other contexts I've talked about where maybe the impact isn't harmful to the nation as a whole, but could be no less harmful. If we had an inadvertent disclosure of the name of a deep-cover CIA operating overseas, that's classified. If you have the disclosure of the name of a confidential informant who's working with law enforcement or an undercover officer who's working with law enforcement and could be killed if that name is disclosed, I don't think those same national security arguments apply. So I'm not sure that that, you know, the worst case for the government is both helpful and unhelpful to me. I think, you know, if you think it happens here, then we're in a realm where that inherent authority exists, and then we can discuss whether it's appropriate here. But I don't, I'm not sure that, you know, saying. So there is no, there's no provision for clawback in FOIA. And I noticed that under Rule 502, evidence rules, a precondition of recovering something that was inadvertently disclosed is that the holder of the privilege or protection took reasonable steps to prevent the disclosure. And there's been no showing at all here what the government's processes or whether there were any reasonable steps taken to prevent inadvertent disclosure. Why should we infer a clawback that doesn't even have the kinds of controls that Congress or rulemakers might have put on the clawback had they considered the issue? Yeah, I'll address both parts of that. As to sort of what steps the government took, I think you do see in the record that the government fairly quickly, when it realized what happened, asked the plaintiff not to disclose it, asked them to return it. And they said, no. And then they asked the plaintiff, okay, let's let the court resolve this whole, please don't disseminate this information until the court resolves it. And the plaintiff agreed to that. So, you know, they took sort of the same sort of immediate steps that you would think of under a 502 analysis. Normally what you're looking at is, did you, you know, one, are you holding it confidentially? And two, do you immediately say to the other side, we made a mistake, please, please stop this. Maybe I'm misreading it, I had read it that the disclosing party has to show we have a cross check before we give this stuff over. We have some kind of search or review mechanism in place. We're not just, you know, rushing and being willy nilly and then asking the court to claw back. So not the promptness, maybe I'm wrong, but not the promptness of the post disclosure activity, but actually preventing disclosure in the first place. Yeah. And that's not how you read 502. That's not how I read it. And I'll be honest, I have not done a deep dive into the 502 case law to see whether that's a requirement. But what I will say is, you know, when we look, when we're this is applicable law, but we're pointing to it as, you know, here's a body of law that might be useful. But I think the larger point is that Congress has not created any clawback mechanism. And as you say, there are millions of disclosures made every year. Surely this happens. This is something Congress will aware of. There's not an historical basis for this. And it's unclear, at least in this case, how it is necessary to protect the court's judicial authority. Sure. So I think when we're talking about an exercise of inherent authority, that is inherently interstitial. If there is a statutory provision or provision of the rules that says to a court, you can do this or you can't do this, then we're out of inherent authority and we're in sort of express authority land. Inherent authority has to be gap filling by its nature. So I don't think that's a barrier to finding that the authority exists. So what about the other part of the question, which is essentially the primary rationale of every inherent power case that I've seen is that the power is essential or at least incidental to the court's ability to resolve a case expeditiously and orderly, right? Here, sort of unlike discovery, these documents aren't being exchanged in order to facilitate the later resolution of a dispute. You just sort of accidentally gave them the relief they're looking for. And I just wonder how you would say this is essential to the orderly resolution of a case or controversy. Sure. So I think the fact that the documents are the goal of the litigation is helpful to me rather than harmful. It's helpful because, again, they have come into court and said, we want to subject ourselves to the authority of the district court and how to determine whether we get these documents. And I think the district court entered a judgment and issued an opinion and said, you're not entitled to these documents. But that, with respect to these two names, that judgment would have no effect after the clawback order. So I think it does assist the court in effecting the judgment. I'd also, I'd like to take a moment to kind of talk about what this sort of meeting for a process looks like and what the trading of, what sort of the procedure looks like in a FOIA case in district court, because I think it's actually a lot closer to a normal inadvertent discovery disclosure than it sounded like earlier today. So under, like, the local rules in DDC, FOIA cases are exempt from the normal process of scheduling conferences and discovery plans and all of that because there is discovery in FOIA. And instead, what you get is an order from the district court that says, go ahead, see what you can resolve, see what information is available, tell me if you need an open America stay, give me the timelines, and try to narrow your disputes and then bring to the court what you can't resolve. But that's not significantly different from, you know, after a Rule 16 conference, discovery mostly proceeds without the aid of a court. It's not like clawback is only available if the disclosure is made pursuant to a granted motion to compel. If you have sort of the ordinary, if you have discovery that's produced in response to an ordinary response for production, and there's attorney-client material in there, the clawback can be had. So I think this is similar to that, similar to a process that's managed by a district court. And again, I think it is necessary to give effect to the ultimate decision of the court, which is that this information is not subject to disclosure. Although isn't that a little bit circular? Perhaps the district court erred in making a determination whether it was subject to disclosure if there isn't clawback authority. So there's a little circularity there or bootstrapping in that argument. I think, at least in this case, that seems to not be the case because, you know, this wasn't litigated on a name-by-name basis for these claimants. It was litigated on the basis of whether the names of each of these, I think, 17 claimants could be released. And so for at least 15 of them, that's not a moot question. The answer has to be the same for the other two. So I don't, have the authority to reach that answer. Well, I want to understand that because this is one of the things that struck me as potentially odd, right? If this case, if you just mistakenly turned over all of the documents, right, it seems the case would indisputably be moot. And then your argument would be the court should use its inherent power to unmoot the case and recreate a case or controversy. And so something about that just seems very odd for courts that limited to resolving cases or controversy, not reviving them. You know, Your Honor, I think, I'm not denying that there are cases where there could be some element of mootness. While there are cases like the Tenth Circuit case where the information has already been made somewhat public and it's been clawed back, I think if you had a case, for example, where the disclosure was made and immediately went on the front page of the New York Times, at that point, like, you know, clawback would likely be moot. But the fact that there might be some case with mootness doesn't mean that there aren't cases where there is still a live controversy that can be resolved. I don't know, would it be helpful to address the First Amendment issues before we turn to... I'd rather hear your response to whether a showing of a public interest was shown. As to the names of the officers or the claimants? Yeah, names of the officers. Sure. So, you know, I think this is a case where I admit the declaration is thin, but I think it's... The declaration is entirely conclusory, is it not? Because there's a privacy interest that outweighs the public interest. Yeah, I think the best sentence in the declaration is which says release of the information would constitute an unwarranted invasion of personal privacy due to the nature of the complaints. And the nature of the complaints is, I think, does a fair bit of work, because what we're talking about is complaints that have never been tested in an adversarial setting that accuse officers of misconduct. Now, this is not... These are not names alone, right? The names are all that's left to be unprotected, but the names are on a document, most of which has been turned over, that says, you know, Officer John Doe or Officer Redacted did these things to me that were harmful. And I think that context is sort of critical to understanding what the privacy interest is. And the district court was able to draw from the context of the complaints and the case law in this circuit, like Niskanen Center, which says that names that include the possibility of unwarranted intrusion are protected by more than a de minimis privacy interest. Private parties. These are government law enforcement officers who do their work in public and have the authority to wield force in public against members of the public. Those are private homeowners that are being affected by the building of, I think it was a pipeline. It seems like the privacy interests are rather differently situated. And our case law says we look at this contextually in evaluating privacy interests. Your Honor, there are many cases, including a string site in Niskanen that we point to in the brief, but I'll look at, I'll turn to the Stern case, which involves law enforcement officers, low ranking law enforcement officers accused of misconduct. And the court said things like, you know, the fact that they are low ranking. That wasn't for conduct that itself took place in public, was it? In Stern? I don't believe so, Your Honor. But, you know, if. And it was unwitting on their part. So I think that was the finding in Stern. We have allegations of intentionality here. But again, we're talking about allegations that have not been tested in an adversarial proceeding. Do U.S. Park Police officers wear name badges? I believe they do. So, you know, Your Honor, I am not suggesting that, you know, if there was someone filming this incident and that was widely publicized, that it would be that we could we could necessarily invoke a privacy exemption here. But just because information is public somewhere doesn't mean that you can't apply a FOIA privacy exemption. The Reporters Committee versus DOJ case, which is not the Supreme Court's Reporters Committee case from the late 80s about rap sheets, holds that, you know, information that in theory could be obtained if you went around the country and scraped different state court dockets and went to different police departments and that sort of thing, you know, that is public. But there's still a privacy interest because it is practically obscure. You know, and I think in this context, that's that's the same thing for these handful of officers who were involved in these incidents. What is the nature of the substantial privacy interests of the officers? So I think it's a privacy interest in avoiding sort of the the opprobrium, the potential for harassment of being associated with allegations. So, Your Honor, by by people who could learn the officer's names and believe that they've wronged. So one of the amicus briefs in this case from the National Police Accountability Project expressly compares the officers here to Derek Chauvin, the cop who murdered George Floyd. There was a there was a, you know, I think and the plaintiffs, well, their purpose in requesting documents is not relevant to the FOIA analysis. I think it is worth noting that they are seeking this information as part of sort of ongoing reporting into what they call law enforcement misconduct, police misconduct. So, you know, being associated with something as minor as poor performance in an agency is something this court has held has a more than de minimis privacy interest. And this is I think the allegations here are potentially worse than that. When you talk about being associated with something as minor as performance in an agency, which case are you thinking of? So I'm talking about, you know, so Stern citing another case, which unfortunately I don't have sitting here in my notes, talks about minimal privacy interest in job performance evaluations and then goes on to say in here we have more than that because we have these allegations of misconduct. I'm sorry, I don't have the nested quoting parenthetical in my notes right here. But this is not I don't think these are cases where you're talking about names in isolation. Now, again, the district court was able to draw on the context of the complaints. The district court was able to draw on the case law and the circuit. The district court was able to draw on some basic common sense that was based the idea that, you know, the nature of the complaints that would would I think one fundamental proposition in our case law, it's in the Horner case that you both cite and a case called Morley, is that this obligation of explaining the likely consequences is on the government. And so this whole discussion is just showing that you've ably come up with an articulation of what the likely consequences would be. And that's not the affidavit. And it's also making clear how contextual this analysis needs to be. And it seems to me our cases require that this contextual explanation doesn't have to be very extensive, maybe, but an explanation of what the likely consequences are. That's a quote from Horner has to be in the affidavit. And I'm just I realize that doesn't lend itself very well to a question, but I'm I'm troubled. Yeah, Your Honor. Undoubtedly, it would be better if the things the district court had said in its opinion were expressly in those words in black and white written in the declaration. And if that's enough for us to prevail, then this court should remand and we should fix that. We can fix the the declaration. It's to me that the declaration itself. Cites to the Vaughn Index, and it's only in the Vaughn Index, which is not a declaration, it's not under penalty of perjury where the government says these complaints are not substantiated, which might be part of a contextual case specific argument that privacy interests are impaired, where allegations have been made. They haven't been substantiated. The case has been settled, leaving the alleged tortfeasor. Leaving the implication that that the tort was was committed. There's not even evidence, competent evidence that we can consider, and we give the government a lot of leeway in the FOIA context to use declarations. But it really falls. I mean, it's hard for me to understand how we can could conclude that this doesn't fall short. So, your honor, I think what I would say is I think that there is from sort of the context of I think the district court was able to draw on sort of what was implied and was baked into an admittedly bare-bones declaration to reach an appropriate conclusion. If the court disagrees, then I think remand is appropriate, and I'm happy to address sort of the five reasons why we shouldn't. You mentioned that the complaints, you know, they have detail about what the person is alleged to have done, and they don't have the name, and then you plug the name in, and that becomes something that's an invasion of privacy. We don't have those complaints in the Joint Appendix, do we? No, they are, and I don't know if they're on the district court docket. They were included, if you look at the Vaughn Index as a reference to an administrative record, but I don't know that that was ever, I don't believe that was ever docketed. Well, the coroner and every single case that you grouped with it in page 11, in your footnote, talks about names and addresses. I was a little surprised when, in the text of your brief, you said this court has, quote, consistently found that the privacy interest of an individual's name, ellipsis, surmounts this low bar. It's names and addresses. So, Your Honor, I, what this court has said is that, I'll point to Ms. Kanin's Center 20F4 at 791, which is that while names alone are not always entitled to Exemption 6, quote, we have found a significant privacy interest whenever the information sought was of a type that might have invited unwarranted intrusions, and any, you know, a name plus some other identifying information gets you over the bar, whether that's an address, a parcel number, a phone number. What do we have here? Here, you have a complaint that says, this person is a Park Police officer, and he did, he engaged in this conduct. And that, you know, doesn't help someone locate the, I mean, the relative and parties, the relevant parties here know that they're talking about a Park Police. Right, Your Honor, and that's why I'm suggesting that the name, you know, the name in and of itself, that this person works for the Park Police may or may, if we had a list of Park Police officers, and that's what was sought, that may or may not be privacy protected, but when it's a name that is in the middle of a memo explaining why someone is accused of misconduct, that surrounding context is what provides the privacy interest. Well, I thought the role of the address in all of these here, one cannot find, because of the name, find them without more. I mean, Your Honor, I, you have a name, you have an employer, you have a city where they work. I, you have dates of employment. I don't think you are talking about a name, just in context, just divorce of context. Well, I think that's, that's true in some of these cases that you're talking about with its name and address. Individuals associated with abortion medications. Employees eligible to vote, that's in a board election, so we know where they work. Right. So, so, Judge Ginsburg, I think what those cases are showing is sort of a minimum hurdle to clear, not a necessary condition for showing that there's a privacy exemption. I understand that. In that, in those cases, it was name and address. You're saying, well, look, it's name and plus something. Yes. But the plus something you've given us was also in those cases. The plus something, the, the allegations of misconduct, I mean, sure, that's, that's present in, in Stern as well, where the court held that there was a substantial privacy interest, and I don't believe there were addresses or phone numbers or anything in there. But I don't think, I think you're not talking about names in isolation. We have case law about the incremental value of the information. Does that help you or hurt you? I think it is helpful in the balancing portion of the analysis because you do, the point of FOIA is to show what agencies are doing. And as the district court, I think, correctly held, you know what the agency is doing because you have all this information. What you don't have in it is a name. And, you know, there's a suggestion in the briefs that what you would get, the incremental value you would get is you would know if there is systemic misconduct. You don't know if they're repeat offenders. And that, I think that's the main concern is whether people who have been accused of excessive use of force or even found by an using excessive force. So that's where the name really comes in. And isn't there incremental value in the context of police use of force to having those names be public so there can be accountability? I mean, your honor, I think you have to look at a FOIA request on sort of a case by case basis. So I don't think you can look to what information this might theoretically be compiled with at some point in the future. I think that's speculative. Why not? When we think about the incremental value, isn't that an increment over and above what might already be known or? I don't think so, your honor, because it relies on sort of just sheer speculation about what might occur at some point in the future. There might be records that could be FOIAed that would be relevant to this. It could be, you know, internal affairs records, disciplinary records. And, you know, I'm not inviting that, but if that's what comes, then we'll litigate, you know, we'll figure out whether anything can be disclosed and we can litigate that case when it comes. Are there four names at issue here or three? The record is a little unclear. I think there were two officers involved in one of the torts and one in each of the other. So there's three tort claims. One of them involves a sergeant who's the alleged tort defuser and an officer who was a witness. And then the other two involve two detectives. I mean, it's not in the record. I'm happy to represent to the court that those are not the same detectives. I think, but I also think if there's one thing this record shows, the plaintiff requested eight years of tort claims from this agency, which has more than 500 sworn officers, came up with a total of three tort claims that were settled in that eight-year period. The most, you know, the highest settlement value was $17,500. The lowest was $13,500. This is not a record that shows an agency that is run amok and is hiding, you know, serial abuse. It's an agency that I would wager has, you know, substantially below average numbers of claims. I was also impressed by that. How many officers you said they had? The latest, as of now, they have 500 and change. I think that number's been going down. So it might've been slightly higher during the relevant period. Do they have general arrest authority in the jurisdictions? They have general law enforcement authority in the District of Columbia and in- There are 10 other jurisdictions. Yeah, and basically in the counties that you would think of as like the DC metro area, but not all of them. They're like metro police where they can arrest for state or federal crimes in those areas. I believe that's correct, Your Honor. And then they have some lesser authority. There's two offices, one in San Francisco that guards the Presidio and the Golden Gate Bridge, and one that does the Statue of Liberty. I don't want to take up too much time. I would like to very briefly address the remand issue, if I may. Or if I need not. Yeah, I think we're okay. Okay, thank you. Then we would ask that you affirm. And did Mr. Davey have any rebuttal time reserved? He has three minutes. All right. Is that okay, Your Honor? I'll be very fast. I just want to make three points in rebuttal. The first is that my colleague started by saying that it's unfortunate but inevitable that the government will make mistakes in these cases. And I think if you look to Florida Star, the Florida Star and all the other cases from the Supreme Court contemplate that. And they say that it is on the government to manage this. And that means they have the FOIA itself. They can use the substantial powers of the government to offer a remedy to the individuals whose privacy interests are compromised if it comes to that. But it is not on the government. It is not within the government's authority to ask for a remedy against a requester who receives information. That's number one. And relatedly, I would say, Judge Pillard, in response to your question, you were asking about Rule 502. Again, I would reject the application of those rules in this context. But even to the extent that we're talking about what the government did subsequent to the inadvertent disclosure, I do think it's important to note that the government still put the name in the Vaughn Index. One of the names is sitting on the district court docket right now. It's in the appendix of this case. I'm not going to say it because I'm trying to be responsible. But I think if you look at what the government did and did not do even afterward, I don't think they would meet the Rule 502 standard, even when it comes to what they did afterward, never mind what they did before. The second point I want to make is in response to one of Judge Garcia's questions, which is that it's not about resolving litigation. I think my colleague mentioned that even if you look at the local rules in DDC, it talks about these cases being exempt from normal discovery. This court's opinion in Stonehill specifically distinguishes discovery and disclosure under the FOIA. And as you noted, the government can always disclose information, even as to which they might otherwise assert an exemption. And that doesn't change the district court's ability to resolve contested questions in front of it. And that's Sierra Club. And the last point I'll make goes back to this question of remanding versus reversal. And I have some sympathy for my colleague having to defend the declarations that were in the record, because they are conclusory. They just state the legal standard and don't add any additional context. But I think if this court looks at even now, never mind even what was in the brief, even what my colleague said at argument, even now, the sort of idea of what harassment might ensue, it's extremely speculative. If this court looks at two cases where the court has recognized the possibility of that, one of them is FDA, which is in the brief. And they specifically connected actual past violence against people who were involved in and around the issue of abortion with people who, there the request was names for people that have been involved in approving a drug that is related to abortion. That's the level of connection that's required. There was also a case that issued during the course of the briefing here. So it's not in the brief, but I would point the case to Insider, Inc. That case is at 92 F4, 1131. And in that case, the individuals in question had already been contacted and harassed substantially directly. And that was in the record. And here there's just, and that's what that case said was required. And here there's just, there's just none of that. And, you know, I think the last thing I want to say about the privacy balancing is to get back to sort of Judge Ginsburg's question about whether and to what extent there's a second piece of information beyond names. And to the extent that my colleague says that the allegations of misconduct themselves and the complaints are other information that can't be right. And the reason for that is that that's the functioning of the government. That is exactly what the FOIA is meant to allow people to have access to in the first place. Thank you. Thank you. The case is submitted.
judges: Pillard; Garcia; Ginsburg